STATE, Plaintiff in error, v. ROGERS, Defendant in error.

*No. State 230 (1974). Argued September 8, 1975.—Decided October 2, 1975.*
(Also reported in 233 N. W. 2d 480.)

For the plaintiff in error the cause was argued by *David J. Becker,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the defendant in error there was a brief by *Frederick H. Miller* and *Miller, Rothstein & Mussallem,* all of Madison, and oral argument by *Frederick H. Miller.*

CONNOR T. HANSEN, J. The issue is whether the delay between the date of the alleged offense and the date of the institution of criminal proceedings against James T. Rogers, defendant in error (hereinafter defendant), violated defendant's right to due process of law under the fifth amendment to the United States Constitution and art. I, sec. 8 of the Wisconsin Constitution.

On April 5, 1973, a complaint was filed in Lincoln county court charging defendant with violations of secs. 946.41 (1), 346.70 (1), 346.70 (2), 346.62 (1), 346.57 (2) and 346.57 (3), Stats. All six counts arise out of or relate to a one-car automobile accident that occurred on October 28, 1971.

On October 28, 1971, a man and woman were observed emerging from an overturned automobile belonging to defendant. Because of the fact that defendant then held the post of district attorney of Lincoln county, a special prosecutor was appointed by the Lincoln county circuit court to prosecute any charges arising out of the accident.

The special prosecutor made an investigation of the accident and brought and prosecuted charges between January 17, 1972, and June 29, 1972, against one Cynthia Peck, for filing a false traffic report with respect to the automobile accident. A plea of no contest was entered on June 29, 1972, bringing the action against Peck to a close.

At this time, defendant was a candidate for re-election to the office of Lincoln county district attorney. In September of 1972, defendant was defeated in the primary and left office on January 1, 1973. The appointment of the special prosecutor was continued by order filed January 31, 1973.

The special prosecutor filed a six-count criminal complaint against defendant on December 27, 1972. A summons was issued on February 4, 1973, and the complaint withdrawn after a motion hearing on March 30, 1973. An identical complaint was filed on April 5, 1973. The defendant subsequently filed a motion to dismiss. Affidavits were filed in support of and in opposition thereto. The trial judge entered an order and judgment dismissing the complaint. November 27, 1973, the state appealed to the Lincoln county circuit court. The circuit court entered an order affirming the order and judgment of the county court dismissing the complaint. This review follows.

This case does not involve an alleged violation of the defendant's sixth amendment right to a speedy trial. The sixth amendment, speedy trial right cannot be violated by a pre-arrest delay. *United States v. Marion* (1971), 404 U. S. 307, 92 Sup. Ct. 455, 30 L. Ed. 2d 468.

The trial court recognized that the case did not present a sixth amendment question. It then found that the question posed concerned the defendant's due process rights for a fair trial.

The trial court, after recognizing that the United States Supreme Court addressed this issue in *United States v. Marion, supra,* importunely decided that the precharge delay violated the due process rights of the defendant based on the balancing test promulgated by the supreme court for considering possible sixth amendment "speedy trial" violations in *Barker v. Wingo* (1972), 407 U. S. 514, 530, 92 Sup. Ct. 2182, 33 L. Ed. 2d 101.[1] Mr. Justice POWELL, in writing for the court in *Barker,* page 519, stated, "The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused. . . ."

On appeal, the circuit court correctly indicated that the sole issue was whether error was committed by the trial court in its conclusions that due process was denied by the delay, since the rule that the findings of the trial court must be sustained unless against the great weight and clear preponderance of the evidence is inapplicable where facts are not in dispute, or where a finding of fact is based upon an erroneous view of the law. The circuit court stated that, based on a review of the record and the reasons for the decision, no error had occurred since "essential fairness is a fundamental due process requirement in criminal prosecutions and undue delay in notifying the accused of the charges to be pressed, breeds un-

[1] *Hadley v. State* (1975), 66 Wis. 2d 350, 225 N. W. 2d 461.

fairness by adversely affecting the preparation and presentation of his defense."

It is well established that the statute of limitations prescribed by the legislature for various offenses is the primary guarantee against bringing overly stale prosecutions. *United States v. Ewell* (1966), 383 U. S. 116, 122, 86 Sup. Ct. 773, 15 L. Ed. 2d 627. However, this court and a considerable number of other jurisdictions have recognized that a statute of limitations is not the sole standard by which delay between the date of the alleged offense and arrest is measured when considering a denial of due process. *State v. Midell* (1968), 40 Wis. 2d 516, 162 N. W. 2d 54, and cases cited therein.[2]

In *United States v. Marion, supra,* the high court considered the issue of alleged denial of due process resulting from delay between the date of the alleged offense and indictment, and stated at pages 325, 326:

"The 38-month delay between the end of the scheme charged in the indictment and the date the defendants were indicted did not extend beyond the period of the applicable statute of limitations here. . . . Nor have appellees adequately demonstrated that the pre-indictment delay by the Government violated the Due Process Clause. No actual prejudice to the conduct of the defense is alleged or proved, and there is no showing that the Government intentionally delayed to gain some tactical advantage over appellees or to harass them. Appellees rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost. In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment. Events of the trial may demonstrate actual prejudice, but at the present time appellees' due process claims are speculative and premature."

[2] *See also: Gonzales v. State* (1970), 47 Wis. 2d 548, 177 N. W. 2d 843; *State v. McCarty* (1970), 47 Wis. 2d 781, 788, 177 N. W. 2d 819.

*Marion* also holds that to accommodate the sound administration of justice to the rights of the defendant to a fair trial, it will necessarily involve a judgment based on the circumstances of each case. Nevertheless, *Marion* clearly states that actual prejudice to the defendant's case must be shown, and that possibilities of prejudice inherent in any extended delay are not enough in view of the statute of limitations to justify dismissal.

The factors of *United States v. Marion, supra,* have been relied upon in determining an absence of a showing of actual or substantial prejudice in *United States v. Joyce* (7th Cir. 1974), 499 Fed. 2d 9, involving a thirty-four-month delay; *United States v. Ricketson* (7th Cir. 1974), 498 Fed. 2d 367, involving a fifty-six-month delay; and *United States v. White* (7th Cir. 1972), 470 Fed. 2d 170, involving a fifteen-month delay.

We are of the opinion that *United States v. Marion, supra,* establishes that it is not appropriate to apply the *Barker v. Wingo, supra,* factors of the sixth amendment speedy trial rights in determining actual prejudice as it relates to possible denial of due process and fair trial in a pre-arrest delay. We conclude the trial court was in error in using the *Barker* factors in deciding the instant case.

We have before us the same record on which the trial court and the circuit court made their determinations on the issue of prejudice. We, therefore, deem it appropriate and in the interest of justice to make an independent review of the record and a determination as to whether the defendant has demonstrated any actual or substantial prejudice to his right to a fair trial as a result of the delay.

The defendant alleges in his affidavit that he has been prejudiced in the following ways:

(1) He was not provided with the names of witnesses for fifteen months and, therefore, was unable to interview them until long after the accident.

(2) He had no opportunity to obtain evidence from the scene.

(3) He had no opportunity to obtain evidence from the automobile involved.

In response to this, the state indicates that:

(1) The testimony of the witnesses has changed over that period more in favor of defendant's version of the occurrences, and

(2) and (3) defendant was informed very early of the possibility that charges would be brought, and that the automobile was under inspection.

There is no showing that any of the witnesses were not available, and had there been such showing, how their testimony would have been material. Defendant was obviously informed of the possibility of charges soon enough to allow him to inspect the scene. The automobile involved belonged to him. *United States v. Marion, supra,* did not determine "when and in what circumstances actual prejudice resulting from pre-accusation delays requires the dismissal of the prosecution." However, it did determine that not "every delay-caused detriment to a defendant's case should abort a criminal prosecution."

No actual prejudice to the conduct of the defense has been alleged or proved. Any claim of actual prejudice is unsubstantiated.

Nor has the defendant shown that the state intentionally delayed to gain some tactical prosecutorial advantage over the defendant or to harass him. The delay resulted from the pendency of the Peck action, and the state admittedly elected not to proceed during the defendant's re-election campaign or while he was the district attorney. The defendant alleges inconvenience, indignity, anxiety and financial loss resulting from the delay and the undue publicity surrounding it. Assuming these facts to be true, they do not rise to the level of intentional

government action to gain tactical advantage or to harass.

The order of the circuit court is reversed and the cause remanded, with directions to order the order and judgment of the trial court vacated.

*By the Court.*—Order reversed and cause remanded.

WILKIE, C. J. *(dissenting)*. I agree with the majority that whether pre-accusation delay is fatal to bringing a charge, as here, against a defendant, is governed by the decision of the United States Supreme Court case of *United States v. Marion.*[1] I disagree with the majority's interpretation of that decision, and I would reverse and remand for further proceedings in the trial court because the trial court did not apply the standards of *Marion* and it should be given an opportunity to apply those standards following an evidentiary hearing on the defendant's motion to dismiss for delay.

I disagree with the clear implication of the majority opinion that the two-part standard of *Marion* (actual prejudice *and* intentional prosecutorial delay) is the exclusive test in this type of case. In my opinion, *Marion* should be interpreted to mean that actual prejudice alone can be sufficient to warrant dismissal. Thus, the United States Supreme Court said:

". . . we need not, and could not now, determine when and in what circumstances actual prejudice resulting from pre-accusation delays requires the dismissal of the prosecution."[2]

The final words of the opinion are:

". . . Events of the trial may demonstrate actual prejudice, but at the present time appellees' due process claims are speculative and premature."[3]

---

[1] (1971), 404 U. S. 307, 92 Sup. Ct. 455, 30 L. Ed. 2d 468.

[2] *Id.* at page 324.

[3] *Id.* at page 326.

Neither of these passages mentions intentional prosecutorial delay as a separate mandatory element of the test. In this regard it should be noted that one of the federal cases decided since *Marion*[4] specifically reserved judgment on a prosecution argument that *Marion* had established intentional prosecutorial delay as a required element of the test.

This interpretation of *Marion* is preferable in light of a defendant's protected constitutional right to due process, which includes a right to a fair trial. *Marion* recognizes that pre-accusation delay can infringe upon this right.[5] To hold that *Marion* also requires a defendant to carry the heavy burden of proving *intentional* delay in every case is inconsistent with fair protection of this right. Thus interpreted, *Marion* is not inconsistent with the more flexible balancing approach of *Midell*[6] and subsequent Wisconsin cases.[7] According to this approach, intentional prosecutorial delay is only one factor which the trial court should consider, and it is not a condition precedent to a determination that the case should be dismissed. This more flexible approach better secures the due process right of a defendant to a reasonably prompt accusation of a crime.

As to the showing of actual prejudice the defendant was never afforded an evidentiary hearing on his motion to dismiss for delay. Unlike *Marion,* where the defendant relied only "on potential prejudice and the passage of time,"[8] in the instant case the defendant produced a sworn affidavit alleging specific facts amounting to actual prejudice. These included (1) prosecutorial withholding of the names of witnesses to the alleged crime

---

[4] *United States v. White* (7th Cir. 1972), 470 Fed. 2d 170, 175.

[5] *United States v. Marion, supra,* footnote 1, at page 324.

[6] *State v. Midell* (1968), 40 Wis. 2d 516, 162 N. W. 2d 54.

[7] *Gonzales v. State* (1970), 47 Wis. 2d 548, 177 N. W. 2d 843; *State v. McCarty* (1970), 47 Wis. 2d 781, 177 N. W. 2d 819.

[8] *United States v. Marion, supra,* footnote 1, at page 323.

for more than fifteen months after its occurrence, (2) a delay of over fourteen months in notifying defendant that he would be charged, with the result that he lost his chance to make a meaningful survey of the scene of the crime and a useful test of the automobile involved in the crime, and (3) apparent loss of the opportunity to cross-examine at trial two key witnesses who allegedly had given conflicting accounts of the event.

I would remand with directions to the trial court to afford defendant an evidentiary hearing on his motion to dismiss for delay.